[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 21, 2006
THOMAS K. KAHN
CLERK

No. 05-17126
Non-Argument Calendar

_____

BIA No. A70-409-071

NUAROLD ROBENSKY CAMACHO-SALINAS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(August 21, 2006)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Nuarold Robensky Camacho-Salinas appeals the decision of the Board of Immigration Appeals ("BIA") affirming the decision of the immigration judge ("IJ") and denying his petition for withholding of removal and for waiver of inadmissability under INA § 212(h), 8 U.S.C. § 1182(h). After review, we dismiss the petition in part and deny the petition in part.

## I. BACKGROUND

Camacho-Salinas, a citizen and native of Nicaragua, illegally entered the United States in 1990 when he was four years old. In October 2000, he adjusted his status to that of lawful permanent resident ("LPR") pursuant to the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, § 202, 111 Stat. 2160, 2193 (1998).

In December 2004 at age nineteen, Camacho-Salinas was convicted in Florida state court of burglary, grand theft, and strongarm robbery. In February 2005, the Department of Homeland Security ("DHS") served Camacho-Salinas with a Notice to Appear, charging him with removability under Immigration and Nationality Act ("INA") § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii) because he had been convicted of two crimes involving moral turpitude. At the time the removal proceedings began, Camacho-Salinas had lawfully resided in the United States for a little over five years (October 2000 to February 2005).

Camacho-Salinas filed an application for asylum, withholding of removal, and relief under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. He also requested a waiver of inadmissibility under INA § 212(h), 8 U.S.C. § 1182(h) and filed an application for waiver of grounds of excludability under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), in which he admitted to his convictions of moral turpitude and requested relief from excludability. As detailed later, Camacho-Salinas is eligible for a § 212(h) waiver of his convictions involving moral turpitude, which would normally render him inadmissible, only if he has lawfully resided in the United States for seven years preceding the initiation of removal proceedings. See INA § 212(h), 8 U.S.C. § 1182(h).

At a hearing on his applications, Camacho-Salinas, who was then nineteen years old, testified that (1) he feared returning to Nicaragua because his grandfather, a member of the Somosa party, was killed by Sandinista guerillas in 1979, and he believed his grandfather's political opinion would be imputed to him; and (2) although he had recently returned to Nicaragua, with court permission, to visit his sick grandmother (his only remaining relative in Nicaragua), he did not know the country well or speak Spanish. Camacho-Salinas then argued that he would be eligible for an INA § 212(h) waiver if he were an illegal alien rather than

3

an LPR and that the seven-year residency requirement for § 212(h) eligibility for LPRs was a denial of his equal protection rights.

The IJ denied Camacho-Salinas's applications and ordered him removed to Nicaragua. The IJ found that Camacho-Salinas was ineligible for an INA § 212(h) waiver of inadmissibility because his legal residence commenced in 2000 and did not continue for the required seven years prior to the initiation of the removal proceedings in February 2005. The IJ also found that Camacho-Salinas's convictions made him stautorily ineligible for asylum or withholding of removal. The IJ further found that even if Camacho-Salinas was statutorily eligible for withholding of removal, he did not show a well-founded fear of future persecution based on a protected ground. The IJ denied relief under the Convention Against Torture because Camacho-Salinas never alleged torture.

On appeal to the BIA, Camacho-Salinas argued the merits of his application for withholding of removal without addressing his statutory ineligibility for withholding due to his convictions. He also argued that the denial of a waiver of inadmissibility under INA § 212(h) violated his Fifth Amendment equal protection rights.

The BIA affirmed the IJ's decision, finding that Camacho-Salinas failed to establish eligibility for a waiver of inadmissibility under INA § 212(h) because he had not been an LPR for seven years prior to the initiation of removal proceedings.

4

The BIA also declined to consider Camacho-Salinas's equal protection argument, but noted that the argument was meritless under <u>Moore v. Ashcroft</u>, 251 F.3d 919, 926 (11th Cir. 2001). The BIA declined to consider the merits of Camacho-Salinas's withholding of removal claim because he failed to challenge the IJ's conclusion that he was statutorily ineligible for relief. Camacho-Salinas then filed a timely petition for review.

## II. DISCUSSION

### A. Jurisdiction

We first must determine whether we have jurisdiction to entertain Camacho-Salinas's petition. <u>Bahar v. Ashcroft</u>, 264 F.3d 1309, 1311 (11th Cir. 2001). Section 242(a)(2)(C) of the INA provides that this Court has no jurisdiction to review the final order of removal if Camacho-Salinas is removable by reason of having committed a crime involving moral turpitude for which a sentence of one year or longer may be imposed. 8 U.S.C. § 1252(a)(2)(C). Nonetheless, because judicial review is limited by statutory conditions, we retain jurisdiction to determine whether those conditions exist. <u>See</u> <u>Bahar</u>, 264 F.3d at 1311; <u>see also</u> <u>Sosa-Martinez v. U.S. Att'y Gen.</u>, 420 F.3d 1338, 1340 (11th Cir. 2005). Thus, we must determine if Camacho-Salinas "is (1) an alien; (2) who is removable; (3) based on having committed a disqualifying offense." <u>Moore</u>, 251 F.3d at 923. Because Camacho-Salinas does not contest that he is an alien removable for prior

5

disqualifying crimes, § 242(a)(2)(C) "deprives us of jurisdiction to review the final order of removal." Vuksanovic v. U.S. Att'y Gen., 439 F.3d 1308, 1311 (11th Cir. 2006).[1]  In addition, INA § 242(a)(2)(B) proscribes our jurisdiction to review discretionary decisions made in immigration proceedings, including claims regarding INA § 212(h) relief.  See 8 U.S.C. § 1252(a)(2)(B).

However, following the passage of the REAL ID Act of 2005 and despite other provisions which "limit[] or eliminate[] judicial review," we retain jurisdiction to review "constitutional claims or questions of law."  8 U.S.C. § 1252(a)(2)(D); Balogun v. U.S. Att'y Gen., 425 F.3d 1356, 1359-60 (11th Cir. 2005), cert. denied, __ U.S. __, 126 S. Ct. 1920 (2006).  Therefore, we have jurisdiction to address Camacho-Salinas's Fifth Amendment equal protection claim regarding his application for § 212(h) relief.[2]

**B.    Section 212(h)**

---

[1]We also lack jurisdiction to review Camacho-Salinas's withholding of removal claim, even in the absence of his convictions for crimes involving moral turpitude, due to his (1) failure to exhaust his administrative remedies by challenging his statutory ineligibility before the BIA, see INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); Al Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001); and (2) failure to address his statutory eligibility in his brief, see Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1286 n.3 (11th Cir. 2003).  We do not discern any attempt to raise an asylum or Convention Against Torture claim in Camacho-Salinas's brief, but, to the extent that he raises any such claims, we lack jurisdiction to review them for the same reasons.

[2]The BIA issued its own opinion and did not expressly adopt the IJ's decision. Therefore, this Court reviews the BIA's decision.  Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  We review the BIA's statutory interpretation of the INA de novo, but defer to the BIA's determination if it is reasonable.  Moore, 251 F.3d at 921.  We review de novo an alien's constitutional challenges.  Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003).

6

Camacho-Salinas maintains that INA § 212(h) violates his Fifth Amendment equal protection rights because it denies him a waiver of inadmissibility for failing to meet the seven-year residency requirement by two years, but a similarly situated illegal alien applicant would be eligible for such a waiver. Additionally, Camacho-Salinas argues that the distinction between legal permanent residents and all other applicants for § 212(h) relief serves no legitimate governmental purpose.

INA § 212(h) permits the Attorney General, in his discretion, to waive INA § 212(a)(2)(A)(i), 8 U.S.C. 1182(a)(2)(A)(i), which provides that an alien convicted of a crime involving moral turpitude is inadmissable. 8 U.S.C. § 1182(h). This allows an LPR who committed crimes of moral turpitude to receive a waiver of inadmissability. INA § 212(h) also provides that LPRs who have not lawfully resided in the United States for seven years before removal proceedings against them have begun (or who have committed aggravated felonies) are not eligible for § 212(h) relief. 8 U.S.C. § 1182(h).[3] Under the text of § 212(h), no

---

[3]INA § 212(h) provides that "[t]he Attorney General may, in his discretion, waive the application of" the INA provisions rendering aliens convicted of, among other things, crimes involving moral turpitude inadmissible under certain circumstances, such as the alien's rehabilitation or "extreme hardship" to a United States citizen or LPR spouse, parent, or child. 8 U.S.C. § 1182(h). However,

> [n]o waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

8 U.S.C. § 1182(h).

residency requirement applies to an alien who entered the country illegally and is not an LPR.

We begin the analysis by noting that Congress possesses broad power to regulate the admission and exclusion of aliens. INS v. Delgado, 466 U.S. 210, 235, 104 S. Ct. 1758, 1772 (1984). "Because of Congress' plenary power over aliens, federal classifications such as those found in INA § 212 are subject to minimal scrutiny under the rational basis standard of review and will be found valid if not arbitrary or unreasonable." Moore, 251 F.3d at 924-25. Moreover, Congress need not justify the purpose or reasoning to support its classification. Heller v. Doe, 509 U.S. 312, 320, 113 S. Ct. 2637, 2642 (1993). The legislation must be sustained if any reasonably conceivable state of facts provide a rational basis for the classification. Id.

We have not addressed previously the precise issue raised in this case. However, in Moore, we addressed an equal protection challenge to § 212(h) similar to the one raised by Camacho-Salinas. There, we concluded that "Congress' decision to prohibit lawful permanent resident aliens who commit aggravated felonies from seeking discretionary relief under INA § 212(h) [was not] arbitrary or unreasonable even though such relief is theoretically still available to illegal aliens." Moore, 251 F.3d at 926. Elimination of § 212(h) relief for LPRs who commit aggravated felonies eradicated a source of delay in expediting the removal

8

of criminal aliens from the United States.  Id. at 925.  Further, LPRs "enjoy substantial rights and privileges not shared by illegal aliens . . . .  Because of the rights and privileges they enjoy, it is arguably proper to hold them to a higher standard and level of responsibility."  Id.

While in Moore this Court recognized that "§ 212(h) relief is still theoretically available to illegal aliens," we theorized that "Congress simply may have seen no need to emphasize in the statute that this class of individuals could not seek waiver" because illegal aliens are presumably removable "at any time regardless of whether they have committed aggravated felonies in this country or not."  Id.

Other circuit courts have rejected equal protection challenges to § 212(h).  See, e.g., Taniguchi v. Schultz, 303 F.3d 950, 957-58 (9th Cir. 2002) (rational basis exists for denying waiver to aggravated felon LPRs but not to other aliens); Jankowski-Burczyk v. INS, 291 F.3d 172, 178 (2d Cir. 2002) (same); Lukowski v. INS, 279 F.3d 644, 647 (8th Cir. 2002) (same); Lara-Ruiz v. INS, 241 F.3d 934, 947 (7th Cir. 2001) (same).  In De Leon-Reynoso v. Ashcroft, 293 F.3d 633, 640 (3d Cir. 2002), the Third Circuit held that the residency requirement of § 212(h) also passes rational basis review.  Citing Moore and Lara-Ruiz, the Third Circuit determined that the seven-year residency requirement for LPRs fulfills a legitimate governmental purpose because "Congress could have concluded that LPRs who

9

commit crimes of moral turpitude, despite rights and privileges based on their status that [non-LPRs] do not share, are 'uniquely poor candidates' for waiver." Id. Further, LPRs with family ties who commit crimes are a higher risk for recidivism than non-lawful permanent residents. Id. The Third Circuit also cited our observation in Moore that non-LPRs may be excluded from the United State regardless of committing a crime, so the idea of non-LPR waiver eligibility is more theoretical than real. Id.

In accord with the Third Circuit's reasoning in De Leon-Reynoso and our analysis in Moore, we conclude that a rational basis exists for Congress' decision to require LPRs to reside lawfully in the United States for seven years before becoming eligible for a § 212(h) waiver. Particularly, our analysis in Moore of § 212(h)'s aggravated felon provision is equally applicable to the seven-year residency provision at issue in this case. We see no reason why the rationales discussed in Moore should not apply here. See Moore, 251 F.3d at 925 (pointing to (1) the rights and privileges enjoyed by LPRs and their closer ties to the country, (2) a potentially higher rate of recidivism among LPRs, and (3) a means to accelerate removal of aliens who commit serious crimes). The Third Circuit's adoption of those rationales and its analysis of the residency provision further supports that conclusion. See De Leon-Reynoso, 293 F.3d at 640. Therefore,

10

because a rational basis exists for the seven-year residency requirement for LPRs in § 212(h), Camacho-Salinas has failed to state an equal protection claim.

## III. CONCLUSION

For the reasons stated above, we dismiss the petition to the extent we lack jurisdiction and deny the petition as to Camacho-Salinas's equal protection claim.

**PETITION DISMISSED IN PART; DENIED IN PART.**