[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 25, 2007
THOMAS K. KAHN
CLERK

_____

Nos. 06-11669, 06-12958
Non-Argument Calendar

_____

Agency No. A71-525-385

BERG PLANCHER HYACINTHE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

**(January 25, 2007)**

Before BIRCH, HULL and WILSON, Circuit Judges.

PER CURIAM:

Berg Plancher Hyacinthe, a citizen and native of Haiti, petitions for review

of an order by the Board of Immigration Appeals ("BIA") that denied Hyacinthe's

appeal of the immigration judge's ("IJ's") final order of removal. Hyacinthe filed

a second petition for review of the BIA's order denying his motion for

reconsideration. After review, we deny the petitions.

## I.    Background

### A.    August 13, 2004 Notice to Appear

In 2000, Hyacinthe entered the United States as a lawful permanent resident.

On August 27, 2003, in the United States District Court for the Northern District of

Florida, Hyacinthe pled guilty to three counts of "Bank Fraud," each in violation of

18 U.S.C. § 1344. According to the judgment, the bank fraud offense in Count

One of Hyacinthe's indictment "concluded" on July 5, 1996; the bank fraud

offense in Count Two "concluded" on May 15, 1997; and the bank fraud offense in

Count Three "concluded" on June 18, 1997.

On August 13, 2004, the Department of Homeland Security ("DHS") issued

a Notice to Appear, charging Hyacinthe with removability under 8 U.S.C. §

1227(a)(2)(A)(ii), as an alien who committed two or more crimes involving moral

turpitude that did not arise out of a single scheme of criminal misconduct.[1]

### B.    August 31, 2004 hearing

---

[1]In full, § 1227(a)(2)(A)(ii) provides that an alien is deportable if "at any time after admission [he] is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial." 8 U.S.C. § 1227(a)(2)(A)(ii).

On August 31, 2004, Hyacinthe, represented by attorney Landy, appeared before the IJ. At that time, through Mr. Landy, Hyacinthe admitted the allegations in the Notice to Appear, including that he had been convicted of three counts of bank fraud, and conceded removability. At Mr. Landy's request, the IJ explained to Hyacinthe that his bank fraud convictions did not arise out of a single scheme of criminal misconduct because they were "separate incidents," and while Hyacinthe "had the chance to change [his] mind at any time and stop," he "did not," and instead "committed a whole separate offense." The IJ stated that "[a] single scheme is . . . one in which you commit one offense like if you go in and you pass a bad check. There's forgery for writing somebody's name on it . . . . There's grand theft when you receive the money. That's one scheme." Hyacinthe responded that he understood.

Also at the August 31, 2004 hearing, Mr. Landy stated that Hyacinthe was "of the opinion that these crimes don't arise out of a single scheme." Mr. Landy explained his belief that if Hyacinthe's crimes did arise out of a single scheme, Hyacinthe would be removable in any event under 8 U.S.C. § 1227(a)(2)(A)(iii) for having committed an aggravated felony (as opposed to § 1227(a)(2)(A)(ii) for two or more crimes of moral turpitude not arising out of a single scheme). Mr. Landy explained that if Hyacinthe were removable under § 1227(a)(2)(A)(iii), that "would not be good," because then "[h]e wouldn't have a political asylum

3

application."[2]  The August 31, 2004 hearing concluded with the IJ setting

Hyacinthe's asylum application for a hearing and denying Hyacinthe a bond.[3]

### C.    October 26, 2004 hearing

On October 26, 2004, Hyacinthe, represented by Mr. Landy, appeared again

before the IJ.  Hyacinthe, through Mr. Landy, stated that he wished to "stand by"

his "previous admissions, concessions, and acknowledgments" made at the August

31, 2004 hearing.  The IJ asked Hyacinthe if he was "going to go forward" with his

asylum application.  Hyacinthe, through Mr. Landy, responded that he wished to

"withdraw [Hyacinthe's]  application for asylum and . . . request voluntary

departure as relief from removal."

The IJ stated that before he could accept the withdrawal of Hyacinthe's

asylum application, he had to make sure that the decision was "voluntarily [and]

intelligently made" by Hyacinthe.  The IJ posed several questions directly to

Hyacinthe, asking, <u>inter alia</u>, whether he had an opportunity to discuss his case

with Mr. Landy; whether his decision was voluntary; whether his decision was

uninfluenced by promises, threats, or other improprieties; whether he understood

---

[2]Hyacinthe had filed an application for political asylum in June 2004.

[3]The IJ advised Hyacinthe that he was "not eligible for a bond" under 8 U.S.C. § 1226(c), which provides that an alien who is removable pursuant to § 1227(a)(2)(A)(ii) may not be released on bond unless the alien's release is a necessary part of a witness protection plan.  <u>See</u> 8 U.S.C. § 1226(c); 18 U.S.C. § 3521.

that he was withdrawing his application with prejudice; and whether he was "satisfied with the representation given" by Mr. Landy. Hyacinthe responded affirmatively to each question. The IJ also explained to Hyacinthe that a withdrawal with prejudice meant that he could not "reassert" his claim and that he "would have to depart the United States."

Hyacinthe also agreed that he was subjecting himself to a "final order." Hyacinthe expressed his understanding that if he "wanted to contest anything that happened" in front of the IJ, he would not have that "opportunity." The IJ then entered his final removal order, which granted Hyacinthe's "sole form of [requested] relief"—120 days to voluntarily depart.

## D. Hyacinthe's pro se appeal to the BIA

On November 23, 2004, Hyacinthe filed a pro se notice of appeal with the BIA, in which he contended that he had acquired "new evidence" that Mr. Landy was "ineffective, malicious, and [perhaps] even . . . psychologically unfit to practice law."[4] Thereafter, Hyacinthe filed a pro se "Motion to Invalidate Waiver of Appeal" with the BIA, as well as a merits appeal brief arguing that his due process rights had been violated. The essence of Hyacinthe's filings before the BIA was that Mr. Landy conspired with the IJ to trick Hyacinthe into withdrawing his asylum application, and that Hyacinthe's underlying bank fraud convictions

_____

[4]On October 27, 2004, Hyacinthe filed a complaint against Mr. Landy with the police.

5

were part of a single scheme, making deportation under § 1227(a)(2)(A)(ii) inappropriate.

On February 15, 2006, the BIA adopted and affirmed the IJ's decision, dismissed Hyacinthe's appeal, and reauthorized voluntary departure. The BIA observed that Hyacinthe had withdrawn "all applications for relief and waived his right to appeal the Immigration Judge's decision in exchange for an agreed upon lengthy period for voluntary departure." The BIA addressed Hyacinthe's claim of ineffective assistance of counsel, and concluded that Hyacinthe failed to satisfy "any of the requirements of Matter of Lozada," 19 I. & N. Dec. 637 (BIA 1988).

### E. Motion for Reconsideration of BIA's February 15, 2006 decision

Hyacinthe subsequently obtained new counsel and filed a motion for reconsideration of the BIA's February 15 decision, which the BIA denied on April 24, 2006. The BIA stated that, despite Hyacinthe's allegations to the contrary, it had "addressed all of [Hyacinthe's] claims" in its first decision. The BIA observed that Hyacinthe's motion for reconsideration still failed to meet the Lozada requirements. The BIA again noted that Hyacinthe had "withdrawn all other claims" before the IJ.

Hyacinthe timely filed petitions for review of both BIA decisions.[5]

---

[5]When the BIA issues a decision, we review only that decision, "except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. Other

6

## II. Exhaustion and appeal waiver

The government contends that we lack jurisdiction over all of Hyacinthe's claims, except his ineffective assistance of counsel claim, because Hyacinthe explicitly abandoned all claims in his hearing before the IJ and thereby failed to exhaust his administrative remedies before the IJ.

In order to exhaust administrative remedies, a petitioner must raise the claim before both the IJ and the BIA, unless there is a valid "excuse or exception." See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1251 (11th Cir. 2006); see also Galindo-Del Valle v. U.S. Att'y Gen., 213 F.3d 594, 599 (11th Cir. 2000), superseded on other grounds by statute as stated in Balogun v. U.S. Att'y Gen., 425 F.3d 1356, 1359 (11th Cir. 2005), cert. denied, 533 U.S. 949, 126 S. Ct. 1920 (2006). Because Hyacinthe abandoned his claims before the IJ, Hyacinthe failed to exhaust his administrative remedies, and we lack jurisdiction over his claims, except for his claim of ineffective assistance of counsel. See 8 U.S.C. § 1252(d)(1); see also Amaya-Artunduaga, 463 F.3d at 1250.

Furthermore, Hyacinthe's appeal waiver before the IJ barred his claims

than its Lozada analysis, the BIA adopted the IJ's final order. Accordingly, we review the IJ's decision and review the BIA's analysis as to Hyacinthe's ineffective assistance claim.

To the extent that the IJ's or BIA's decision was based on a legal determination, our review is de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004); Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). Factual determinations are reviewed under the substantial evidence test, and we "must affirm the [IJ's or BIA's] decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar, 257 F.3d at 1283-84 (citation omitted).

before the BIA, making them unexhausted before this Court for this additional reason. As the government argues, the BIA properly concluded that Hyacinthe waived his right to appeal his removal order in exchange for 120 days to voluntarily depart. Under BIA precedent, a valid appeal waiver before the IJ takes away the BIA's jurisdiction. See In re Rodriguez-Diaz, 22 I. & N. Dec. 1320, 1322 (BIA 2000); Matter of Shih, 20 I. & N. Dec. 697, 699 (BIA 1993); see also 8 C.F.R. § 1003.1(d)(2)(i)(G). "Whenever the right to appeal is waived, the decision of the [IJ] becomes final and may be implemented immediately. . . . By waiving appeal, an alien relinquishes the opportunity to obtain review of the [IJ's] ruling." Rodriguez-Diaz, 22 I. & N. Dec. at 1322. The BIA will uphold appeal waivers that are knowingly and intelligently made. See id.; see also United States v. Mendoza-Lopez, 481 U.S. 828, 840, 107 S. Ct. 2148, 2156 (1987) (indicating that alien's waiver of appeal of a deportation order is invalid unless it is "considered [and] intelligent").

Here, the BIA's determination that Hyacinthe waived his right to appeal his removal order is supported by the record. For example, the IJ specifically asked Hyacinthe if he understood that he would not have the "opportunity" to contest anything that happened before the IJ. The IJ also asked Hyacinthe and his counsel if they were prepared to accept the decision as "final." Hyacinthe indicated that he understood. Hyacinthe also agreed, with his attorney, that he would accept the IJ's

8

order as final. According to the BIA, "[a]sking the parties whether they accept a decision as 'final' is a shorthand expression commonly used" by IJs, and "[t]hose who understand the meaning of this shorthand expression, such as aliens represented by attorneys . . . may effectively waive appeal in response to this simple question." Rodriguez-Diaz, 22 I. & N. Dec. at 1322.[6]

Moreover, we agree with the BIA that Hyacinthe cannot avoid his failure to exhaust or invalidate his appeal waiver through his claim that Mr. Landy provided him ineffective assistance of counsel, because Hyacinthe failed to comply with the procedural requirements for asserting a claim of ineffective assistance. A petitioner attempting to "'reopen or reconsider based upon a claim of ineffective assistance of counsel'" must at least "substantially" comply with the requirements of Lozada. See Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1274 (11th Cir. 2005) (quoting Lozada, 19 I. & N. Dec. at 639); see also Gbaya v. U.S. Att'y Gen., 342 F.3d 1219, 1222 (11th Cir. 2003). Lozada requires that a petitioner: (1) provide an affidavit detailing the agreement entered into with counsel and any representations counsel did or did not make regarding the agreement; (2) inform counsel of the allegation of ineffectiveness and provide counsel an opportunity to respond; and (3) establish that a complaint has been filed with the appropriate disciplinary

_____

[6]The BIA's procedure generally requires an alien challenging the validity of an appeal waiver to file a motion with the IJ. Shih, 20 I. & N. Dec. at 699. Although Hyacinthe filed a motion to invalidate his appeal waiver before the BIA, he did not file the required motion before the IJ.

9

authorities regarding any ethical or legal violations committed by counsel, or if no such complaint has been filed, explain why. Dakane, 399 F.3d at 1274.

In his initial appeal to the BIA, Hyacinthe did not comply with any of the three Lozada requirements. Indeed, even Hyacinthe's motion for reconsideration did not substantially comply with the third Lozada requirement, because he failed to file a complaint about Mr. Landy with the appropriate state bar authorities. See Gbaya, 342 F.3d at 1221-22 & n.2 (observing that filing of a complaint with the appropriate state bar disciplinary authorities might satisfy the third Lozada requirement). Accordingly, Hyacinthe cannot establish ineffective assistance of counsel or avoid the exhaustion requirement or invalidate his appeal waiver by virtue of his ineffective assistance claim.

**III**.   **Hyacinthe's removal order**

Alternatively, even if Hyacinthe did not validly waive his appeal rights, Hyacinthe's petitions fail on the merits.

Under 8 U.S.C. § 1252(a)(2)(C), we lack jurisdiction to review a final order of removal if the alien is deportable for a criminal conviction under § 1227(a)(2)(A)(ii). 8 U.S.C. § 1252(a)(2)(C); Camacho-Salinas v. U.S. Att'y Gen., 460 F.3d 1343, 1346-47 (11th Cir. 2006). Nevertheless, because judicial review is limited by statutory conditions, we retain jurisdiction to determine whether jurisdiction exists. Sosa-Martinez v. U.S. Att'y Gen., 420 F.3d 1338, 1340 (11th

10

Cir. 2005). Accordingly, as to Hyacinthe's final removal order, we may address whether Hyacinthe is "(1) an alien; (2) who is removable; (3) based on having committed a disqualifying offense," if such matters are in dispute. Camacho-Salinas, 460 F.3d at 1346 (quotation marks and citation omitted). In addition, "following the passage of the REAL ID Act of 2005 and despite other provisions which 'limit[] or eliminate[] judicial review,' we retain jurisdiction to review 'constitutional claims or questions of law.'"[7] Id. at 1347 (citation omitted).

Hyacinthe's main merits argument is that his convictions are not qualifying offenses under § 1227(a)(2)(A)(ii). Specifically, Hyacinthe asserts that his three bank fraud convictions arose out of a single scheme of criminal misconduct, so that he is not removable under § 1227(a)(2)(A)(ii). We disagree for several reasons. First, the BIA has determined that two offenses are not part of a single scheme when they are separate and distinct crimes and neither offense causes (or constitutes) the other. See Matter of Adetiba, 20 I. & N. Dec. 506, 506 (BIA 1992). At least five other circuits have concluded that the BIA's approach is reasonable. See, e.g., Abdelqadar v. Gonzales, 413 F.3d 668, 675 (7th Cir. 2005) (observing that the BIA "would treat a series of securities frauds by a broker who

---

[7]We lack jurisdiction over Hyacinthe's claim that the IJ denied him due process in "failing to adequately consider" whether Hyacinthe was entitled to pre-trial bond. "No court may set aside any action or decision by the Attorney General . . . regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e). Accordingly, we cannot reach Hyacinthe's claims regarding the IJ's denial of bond.

11

finds a new 'mark' daily as distinct offenses rather than aspects of a single scheme, because the broker could stop after any of the frauds," and citing precedent from other circuits).

Here, as detailed in the judgment, Hyacinthe committed one bank fraud offense that "concluded" in July 1996 and two others that "concluded" in May and June 1997, respectively. Hyacinthe could have "stopped" after his July 1996 fraud, but he did not, and accordingly, the IJ's determination that the crimes did not arise out of a single scheme was not unreasonable. See Abdelqadar, 413 F.3d at 675.

Secondly, at Hyacinthe's August 31, 2004 appearance before the IJ, Hyacinthe, through counsel, stated that he was "of the opinion that these crimes don't arise out of a single scheme," because "if they didn't, he'd have an agg[ravated] felony" that would render him removable under § 1227(a)(2)(a)(iii). Hyacinthe cannot now have it both ways.

Hyacinthe's final merits argument is that, for various reasons, he was improperly denied a full and fair hearing under the due process clause. However, Hyacinthe was not denied due process by the IJ, because Hyacinthe in fact received a hearing at which he chose to concede the allegations in the Notice to Appear. Moreover, despite Hyacinthe's contention to the contrary, he was not entitled to a full BIA opinion addressing every point raised in his appeal from the IJ's final order. See Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1342 (11th Cir. 2003) (BIA

12

is free to adopt IJ's order and to affirm without opinion).

For all of the foregoing reasons, we deny Hyacinthe's petitions.

**PETITIONS DENIED.**