[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10616
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 8, 2010
JOHN LEY
CLERK

Agency No. A088-123-215

NICOLAS CRUZ-SOLIS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 8, 2010)

Before BARKETT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Nicolas Cruz-Solis, a native and citizen of Guatemala, appeals the denial of

his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). He argues *pro se* that the Board of Immigration Appeals ("BIA") and Immigration Judge ("IJ") erred by finding his asylum application untimely. Further, Cruz-Solis contends that the IJ erred in its credibility determination. Finally, he argues that the record compels granting his application for withholding of removal or CAT relief because he established that his father was persecuted by the Ladinos guerilla based on his Mayan ancestry. Upon review of the parties' briefs and the record, we deny the petition.

I.

Cruz-Solis, a native and citizen of Guatemala, entered into the United States without inspection at an unknown place around January 1, 1995. In April 2008, the Department of Homeland Security ("DHS") issued him a Notice to Appear ("NTA"), charging him as removable pursuant to INA § 212(a)(6)(A)(i) and 8 U.S.C. § 1227(a)(1)(A) due to being a citizen of Guatemala and lacking U.S. citizenship.

On February 15, 2008, Cruz-Solis filed his application for asylum, withholding of removal, and CAT relief. According to his application, Cruz-Solis was born on June 19, 1984, in the village of Patzalan. Cruz-Solis claimed that he feared persecution by the Ladinos who created problems for indigenous people in

Guatemala, specifically Mayans.

In January 2009, Cruz-Solis appeared before an Immigration Judge with an attorney and conceded removability. At a removal hearing in March 2009, Cruz-Solis testified that he came from Guatemala and originally spoke Awakateko. He left on December 20, 1994, and arrived in the United States on January 1, 1995. He testified that he left Guatemala because the Ladinos guerrillas made threats against his family when he was eleven years old. Specifically, on December 5, 1994, the Ladinos attempted to recruit Cruz-Solis' father to join their guerrillas even though he was a member of the Civil Patrol. When his father refused, the Ladinos beat him. The Ladinos did not harm Cruz-Solis or his mother. Cruz-Solis claims that his father paid someone to bring him to the United States at the beginning of 1995.

His father now lives in El Salvador, but his mother remains in Guatemala, Huehuetenango—an urban province approximately a half hour to one hour from where they used to live when the Ladinos beat his father. She left in 2002 because the neighbors "bother[ed] her," but he did not elaborate on why. Cruz-Solis indicated that his brother moved to Mexico. Cruz-Solis further testified that he did not file his asylum application until 2008 because he was arrested, although it is unclear when precisely this occurred or how long he spent in jail. Cruz-Solis

3

also testified that he was afraid to return to Guatemala because of the Ladinos incident with his father and their threat against his family.

Cruz-Solis submitted exhibits as well. He included a Wikipedia article from March 2009 on "Aguacatán," which is a municipality in Guatemala, in the province of Huehuetenango. It is the only municipality in the world where Awakateko is the native language. The article also stated that the municipality suffered much violence during the civil war in the 1980's.

Cruz-Solis also submitted a 2008 Country Report on Guatemala from the U.S. State Department. The report noted that, as a general matter, widespread social violence, including killings, and discrimination against indigenous communities. The IJ also noted that there were no reports that the government or its agents committed any politically-motivated killings. With respect to discrimination against indigenous people, the report stated that some people in those communities attained high positions, but they were generally underrepresented in mainstream society. It did not detail specific instances or discuss general patterns of violence presently threatening these groups. Finally, Cruz-Solis submitted a declaration, recounting the Ladinos' attack on his father. He asserts that the group always attacked Mayans.

On March 18, 2009, the IJ rendered an oral decision denying Cruz-Solis'

4

application. With respect to asylum, the IJ indicated that Cruz-Solis turned twenty-one in 2005, however, Cruz-Solis did not file an application for asylum until three years later. The IJ then reasoned that there was no adequate explanation for his failure to file an application for asylum sooner, particularly when he lived in a community with a number of Guatemalans who could assist him. The IJ explained that even if the one-year period to file began when he turned twenty-one, the application was still significantly late. The IJ invoked the pretermitted aspect of Section 208 of the INA. Thus, the IJ only analyzed Cruz-Solis' withholding of removal claim.

The IJ concluded that there was little evidence to support Cruz-Solis' claim other than his testimony and the Country Report. The Country Report showed that indigenous Guatemalans had a presence with some political awareness and prominence. With respect to Cruz-Solis' testimony, the IJ found him not credible because he left aspects of his testimony unexplained. The IJ noted Cruz-Solis provided few details on how he supported himself as a child in this country, and other than his own admission, it was not possible to verify when he entered the into the United States. In sum, the IJ found that Cruz-Solis did not prove that he would be tortured if he was to return to his home country, and that he did not meet the standard for withholding of removal or CAT relief.

In a *pro se* appeal to the BIA, Cruz-Solis reiterated that he fled Guatemala in 1994 because his father was beaten by the Ladinos. He argued that the IJ erred by not taking into account the harms he suffered in Guatemala by the Ladinos and the cumulative effect of the harm. He did not challenge the IJ's credibility finding.

On January 14, 2010, the BIA affirmed the IJ's decision and dismissed his appeal. The BIA explained that Cruz-Solis failed to carry his burden to establish that his life or freedom would be threatened in Guatemala. The BIA also found Cruz-Solis' application for asylum untimely. Cruz-Solis did not challenge this determination on appeal. The BIA reasoned that the threats directed at Cruz-Solis were not based on a protected ground such as his Mayan heritage. Rather, the threats were based on the father's membership in the Civil Patrol and unwillingness to join the Ladinos guerillas. Thus, the BIA concluded that the abuse of Cruz-Solis' father, without more, is insufficient to meet the heightened burden for withholding of removal. With respect to the CAT, the BIA found that he did not establish that it was more likely than not that he would be tortured by the government or those acting with its acquiescence. Cruz-Solis' *pro se* petition to this Court followed.

II.

6

This Court liberally construes briefs filed by *pro se* aliens. *See Lorisme v. INS*, 129 F.3d 1441, 1444 n.3 (11th Cir. 1997). We review *de novo* our subject-matter jurisdiction. *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007).

When the BIA issues a decision, we review only that decision, "except to the extent that [the BIA] expressly adopts the IJ's decision." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the Board adopts the IJ's reasoning, we will review the IJ's decision as well." *Id.* In this case, the BIA agreed with the IJ's reasoning. Therefore, we will review both the IJ's and the BIA's decision. *Id*.

We review the IJ and the BIA's legal conclusions *de novo*, and their factual findings under the substantial evidence test. *Hernandez v. U.S. Att'y Gen.*, 513 F.3d 1336, 1339 (11th Cir. 2008) (per curiam). Under this highly deferential standard, we view the record in the light most favorable to the BIA's decision unless the record compels it; "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Rivera v. U.S. Att'y Gen.*, 487 F.3d 815, 820 (11th Cir. 2007) (citation and quotation omitted).

III.

*A. Asylum*

An application for asylum must be "filed within [one] year after the date of the alien's arrival in the United States." INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B). The lone exception applies when the alien proves "the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified." INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D). With respect to whether an application is timely, "[n]o court shall have jurisdiction to review any determination of the Attorney General." INA § 208(a)(3), 8 U.S.C. § 1158(a)(3). We have held that this provision deprives us of jurisdiction to determine "whether an alien filed within one year or established extraordinary circumstances to excuse an untimely filing." *Sanchez Jiminez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1231 (11th Cir. 2007) (citation omitted). In addition, we lack jurisdiction to review any issue that is not administratively exhausted, including matters not raised before the BIA. INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); *Camacho-Salinas v. U.S. Att'y Gen.*, 460 F.3d 1343, 1346–47 n.1 (11th Cir. 2007) (per curiam).

In this case, we are statutorily precluded from determining whether Cruz-Solis' asylum application was timely or whether its untimely filing was justified by extraordinary circumstances. INA § 208(a)(3), 8 U.S.C. § 1158(a)(3). In any

8

event, Cruz-Solis did not challenge the denial of asylum or the finding of untimeliness before the BIA. Because Cruz-Solis did not exhaust his administrative remedies, we do not have jurisdiction to hear this claim. Accordingly, we dismiss this claim.

B. *Credibility Determination and Withholding of Removal*

Adverse credibility determinations are factual findings and are also "subject to the substantial evidence test, and may not be overturned unless the record compels that result." *Alim v. Gonzales*, 446 F.3d 1239, 1254 (11th Cir. 2006).

An alien is entitled to withholding of removal under the INA, if he can show that his "life or freedom would be threatened . . . because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An applicant seeking such relief bears the burden to show either: (1) past persecution in his country based on a protected ground, or (2) that it is more likely than not that he would be persecuted on account of the protected ground if he returned to his country. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006). This standard is more stringent than the standard for asylum. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam).

"[P]ersecution is an extreme concept, requiring more than a few isolated

9

incidents of verbal harassment or intimidation, and []mere harassment does not amount to persecution." *Id*. at 1231 (alteration omitted) (citation and quotation omitted). We are more likely to conclude that the record compels a finding of past persecution when the applicant has suffered physical injury along with death threats. *Compare Delgado v. U.S. Att'y Gen*., 487 F.3d 855, 861 (11th Cir. 2007) (per curiam) (threats at gunpoint and severe beating constituted past persecution); *with Sepulveda*, 401 F.3d at 1232–33 (death threats without injury did not constitute past persecution).

Further, any persecution must be "on account of" a protected ground, which in the present case, would be Cruz-Solis' political beliefs or his Mayan ancestry. *INS v. Elias-Zacarias*, 502 U.S. 478, 482, 112 S. Ct. 812, 816 (1992). Evidence consistent with private acts of violence or failure to cooperate with guerillas does not constitute persecution on account of a protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) (per curiam). In addition, where a petitioner's family remains in the country or region unharmed, it may contradict claims of a well-founded fear of future persecution. *See id.* at 1259.

Cruz-Solis did not challenge the IJ's adverse credibility determination before the BIA. Therefore, we lack jurisdiction to consider it. *See Camacho-Salinas*, 460 F.3d at 1346–47 n.1. However, even if the IJ had not made an

10

explicit adverse credibility determination, Cruz-Solis was not harmed, and an isolated threat by the Ladinos is not extreme enough to be considered persecution, neither was the threat of harm based on a protected status. *See Ruiz*, 440 F.3d at 1258. Accordingly, Cruz-Solis has not demonstrated eligibility for withholding of removal.

## C. CAT Relief

To qualify for CAT relief, an applicant carries the burden of proof to "establish that it is more likely than not that he [] would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Torture is the intentional infliction of "severe pain or suffering, whether physical or mental." 8 C.F.R. § 208.18(a)(1). The regulations require the applicant to demonstrate that the torture would be inflicted "'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Sanchez Jimenez*, 492 F.3d at 1239 (quoting 8 C.F.R. § 208.18(a)(1)).

Here, the record reflects that Cruz-Solis' mother remains unharmed in Guatemala, approximately a half hour to one hour from where they used to live. AR at 78. Although Cruz-Solis presented evidence of an isolated threat, the incident involved his father, which does not establish that it is more likely than not that Cruz-Solis will suffer torture if he returned. Finally, Cruz-Solis has not met

his burden to demonstrate he would be tortured by the government or by those acting with its acquiescence in Guatemala. Thus, he is not entitled to CAT relief. Accordingly, the petition is denied.

**DISMISSED IN PART, DENIED IN PART.**