[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10239
Non-Argument Calendar

_____

Agency No. A024-715-426

EVEL CAMELIEN,
a.k.a. Joseph Dorvil,

                                                                            Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 7, 2016)

Before TJOFLAT, MARTIN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Evel Camelien,[1] a native and citizen of Haiti, has been denied asylum, withholding of removal under the Immigration and Nationality Act (INA), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT). He petitions for review of the Board of Immigration Appeals' (BIA) final order affirming the Immigration Judge's (IJ) order. On appeal, Camelien makes three arguments. First, he claims the BIA erred by retroactively applying an opinion of the Attorney General to determine whether his prior drug conviction was a "particularly serious crime." Second, Camelien argues the BIA and the IJ erred by concluding that he failed to show his drug conviction was not a particularly serious crime. Finally, he contends the BIA erred by denying his claim for CAT relief. After careful consideration, we dismiss the petition in part and deny it in part.

I.

We review de novo the BIA's and the IJ's legal conclusions and review their factfindings for substantial evidence.[2] Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009). The highly deferential substantial-evidence standard requires us to view the evidence and draw all reasonable inferences in the light

---

[1] Camelien's given name is Joseph Dorvil, but he used the name Evel Camelien when initially entering the United States. For consistency with the deportation proceedings, we refer to him as Evel Camelien.

[2] When the BIA issues its own opinion, we review only that opinion; to the extent the BIA adopts the IJ's opinion or agrees with the IJ's reasoning, we will review both opinions. Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

2

most favorable to the agency's decision; we will reverse the agency's findings only if the evidence compels a different conclusion. Todorovic v. U.S. Att'y Gen., 621 F.3d 1318, 1323–24 (11th Cir. 2010).

We consider de novo whether we have jurisdiction to hear a petition for review. Resendiz-Alcaraz v. U.S. Att'y Gen., 383 F.3d 1262, 1266 (11th Cir. 2004). Under the INA, we lack jurisdiction to review agency decisions that are made discretionary by statute, as well as final removal orders of aliens who have committed an "aggravated felony." See 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1252(a)(2)(B)(ii), 1252(a)(2)(C). However, we retain jurisdiction to review constitutional claims or questions of law in these cases, as well as to determine whether a petitioner is an alien removable for having committed an enumerated offense. See 8 U.S.C. § 1252(a)(2)(D); Camacho-Salinas v. U.S. Att'y Gen., 460 F.3d 1343, 1346–47 (11th Cir. 2006).

## II.

Camelien first argues that the BIA erred by applying In re Y-L-, 23 I. & N. Dec. 270 (Att'y Gen. 2002), retroactively to decide whether his 1986 conviction for sale of cocaine constituted a "particularly serious crime." See 8 U.S.C. § 1231(b)(3)(B). We have jurisdiction to review this argument because it raises a pure question of law. See Ferguson v. U.S. Att'y Gen., 563 F.3d 1254, 1259 (11th

3

Cir. 2009) (finding jurisdiction to consider the legal argument that the repeal of INA § 212(c) had an impermissible retroactive effect).

The INA prohibits an alien's removal to a country if he shows his life or freedom would be threatened in that country based on certain statutory grounds. 8 U.S.C. § 1231(b)(3)(A). This restriction does not apply, however, if the Attorney General decides that the alien has committed a "particularly serious crime." Id. § 1231(b)(3)(B)(ii). An alien automatically qualifies for removal if he has been convicted of an aggravated felony or felonies and sentenced to at least five-years imprisonment, though the Attorney General can decide that a crime qualifies regardless of the sentence imposed. Id. § 1231(b)(3)(B)(iv).

In In re Y-L-, the Attorney General considered which aggravated felonies with a sentence of less than five years might qualify as particularly serious crimes, noting that the BIA had been making this determination on a case-by-case basis for some time. 23 I. & N. Dec. at 273. The Attorney General interpreted aggravated felonies involving drug trafficking as being presumptively serious crimes. Id. at 274. Supporting this interpretation was the fact that "[b]oth the courts and the BIA have long recognized that drug trafficking felonies equate to 'particularly serious crimes' . . . . [F]rom the time the BIA first confronted the contours of 'particularly serious crimes' in 1982, the Board has continually found convictions for drug possession and trafficking to be particularly serious." Id. at 274–75 (quotation

4

omitted) (emphasis omitted).  Only under "extraordinary and compelling circumstances" can this presumption be rebutted—by showing the presence of six factors: (1) a very small quantity of drugs; (2) a very modest amount of money exchanged; (3) mere peripheral involvement in the crime; (4) no violence or threat of violence; (5) no involvement with organized crime or terrorists; and (6) no adverse effect on juveniles.  Id. at 276–77.

Camelien argues that In re Y-L- should not have been applied retroactively to his 1986 drug conviction because it announced a "radical[]" new rule.  Before Camelien's conviction, however, the INA authorized the Attorney General to interpret what constituted a "particularly serious crime."  See 8 U.S.C. § 1231(b)(3)(B)(ii), (iv).  By clarifying that term in In re Y-L-, the Attorney General did not promulgate a new rule, as Camelien supposes, but rather exercised its right to interpret what the statutory text had always meant.  See Yu v. U.S. Att'y Gen., 568 F.3d 1328, 1333 (11th Cir. 2009) (per curiam) (rejecting a similar retroactivity argument because the Attorney General, by interpreting the INA, had determined "what the law had always meant" and had "clarified the correct interpretation of the law; it did not change the law" (quotation omitted)).  What's more, the Attorney General's interpretation comported with longstanding BIA practice.  See In re Y-L-, 23 I. & N. Dec. at 274–75; see also Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 211–14, 109 S. Ct. 468, 473–75 (1988) (reasoning that

a particular statutory interpretation was justified because it was consistent with "past administrative practice"). Thus, the BIA did not err by applying In re Y-L- retroactively.

## III.

Next, Camelien argues that the BIA and the IJ erred by concluding he did not show that his drug conviction was not a particularly serious crime. This argument is framed as a legal one. But it boils down to a claim that the BIA and the IJ improperly weighed the evidence—a "garden-variety abuse of discretion argument" that does not raise any legal or constitutional questions. Fynn v. U.S. Att'y Gen., 752 F.3d 1250, 1252 (11th Cir. 2014) (per curiam). Camelien contends that the BIA and the IJ should have given more weight to evidence of his minimal role in the crime and less weight to his nolo contendre plea, which did not expressly admit guilt. But such a balancing of evidence was soundly within the agency's discretion. Thus, we lack jurisdiction to consider these discretionary determinations. See 8 U.S.C. § 1252(a)(2)(B)–(D); see also Fynn, 752 F.3d at 1253.

## IV.

Finally, Camelien argues that the BIA erred in several ways by denying his CAT claim. First, he asserts that the BIA erred by not viewing the facts of his case in light of Jean-Pierre v. U.S. Attorney General, 500 F.3d 1315 (11th Cir. 2007), a

6

case about a Haitian deportee with AIDS.  Second, Camelien contends that the BIA failed to give reasoned consideration to all his evidence.  Third, he argues that the BIA erred by not addressing his argument that intentional denial of medical care is torture.

Removal may be withheld under the CAT if a petitioner establishes by a preponderance of the evidence that he would be tortured if removed to the proposed location.  See 8 C.F.R. § 208.16(c)(2); Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004).[3]  In making this assessment, the agency shall consider "all evidence relevant to the possibility of future torture."  8 C.F.R. § 208.16(c)(3).  However, each claim or piece of evidence presented by the petitioner need not be specifically addressed—a decision-maker may omit discussion of some evidence and still give reasoned consideration.  Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1302 (11th Cir. 2015).  We will remand only when the decision was so lacking in reasoned consideration that review becomes impossible.  Id.

The BIA did not err by not applying Jean-Pierre to the facts of Camelien's case.  While we have jurisdiction to review the legal question of whether a particular undisputed fact pattern amounts to "torture" under the CAT, we lack

---

[3] If an alien is eligible for withholding of removal under the CAT but is also subject to mandatory denial of such withholding, the alien's removal shall be deferred under 8 C.F.R. § 208.17(a).  8 C.F.R. § 208.16(c)(4).

jurisdiction to review the factfinding that a petitioner failed to prove he would suffer such torture upon deportation. Perez-Guerrero v. U.S. Att'y Gen., 717 F.3d 1224, 1231 (11th Cir. 2013) (per curiam), cert. denied, 134 S. Ct. 1000 (2014). In Jean-Pierre, the BIA and the IJ held, as a matter of law, that the undisputed facts "did not rise to the level of torture as contemplated by the [CAT]." 500 F.3d at 1319. Thus, this Court did not decide whether the petitioner had actually carried his evidentiary burden under the CAT. See id. at 1326 ("The BIA is obliged to resolve the basic questions raised in this CAT petition in the first instance."). Instead, we took issue with the BIA's legal construction of "torture" and found that the BIA had failed to give reasoned consideration to the petitioner's "most important facts" and "essential legal arguments." Id. at 1325. Here, in contrast, the BIA and the IJ found that Camelien's hypothetical chain of "speculative" events was not adequate to show he would more likely than not suffer torture in Haiti. We lack jurisdiction to review the finding that Camelien did not carry his burden under the CAT. See Perez-Guerrero, 717 F.3d at 1231; see also Zhou Hua Zhu v. U.S. Att'y Gen., 703 F.3d 1303, 1314 (11th Cir. 2013) (holding that an IJ's determination of the likelihood of a future event is a factfinding).

Camelien is also wrong to say that the BIA failed to give reasoned consideration to his evidence. We have jurisdiction to review the legal question of whether an agency's decision is so lacking in reasoned consideration that review

8

becomes impossible.  See Perez-Guerrero, 717 F.3d at 1231.  Yet Camelien has not identified omissions that would render meaningful review impossible.  The BIA explicitly referenced "the deplorable prison conditions in Haiti," "incidents of misconduct by prison officials," "[Camelien's] back pain," "[Camelien's inability] to receive proper medical care," "a medical condition which could result in him bleeding during urination or otherwise," and "the constellation of medical events and other concerns."[4]  Camelien picks one line out of the BIA's opinion—which references his testimony—to suggest that the BIA did not consider any of his expert testimony, but this claim is belied by the excerpts above, which concern matters testified on by experts.[5]  The BIA was not obligated to include every bit of language that Camelien thought was favorable to him.  See Indrawati, 779 F.3d at 1302.  The BIA did not fail to give reasoned consideration to Camelien's evidence.

Finally, remand is not warranted by the BIA's decision not to separately address Camelien's argument that the intentional denial of medical care constitutes torture.  The BIA had already addressed and rejected as too speculative Camelien's argument that he would be tortured due to his alleged back pain (which could be exacerbated by a lack of medical care).  The BIA also noted that Camelien had family members in Haiti who could potentially secure his release from detention or

---

[4] The BIA did discount some of this evidence.  But as we have explained, we lack jurisdiction to review the BIA's factfindings and weighing of evidence.

[5] Indeed, the BIA opinion explicitly references Michelle Karshan, one of Camelien's experts.

9

give him medicine.  In light of these explicit findings, there was no need for the

BIA to address Camelien's related argument.[6]  Because the BIA had already

addressed Camelien's argument that he would be tortured due to his alleged back

pain, it did not need to separately address this related argument.

**PETITION DISMISSED IN PART AND DENIED IN PART.**

---

[6] Camelien attempts to distinguish his argument about the intentional deprivation of medical care from his argument about the possible negative effects of his alleged back pain.  But the BIA's findings regarding the speculative nature and the remedies of the latter argument also apply to the former.  That is, Camelien's claim that he would suffer an intentional deprivation of medical care also relies on speculation, and the hypothetical situation could also be avoided through his family's intervention.